Et

per curiam.

* The act of 1777, c. 2. s. 76, directs bail to be given at the commencement of a suit iu the County Court, and also that such bail may surrender the principal in discharge of themselves at any time before final judgmenl obtained against them s. 20. It allows either party an appeal to this court, s. 82. but requires the appellant to give bond, with sufficient sureties, (or the prosecution of such appeal with effect, and for p- rforming the judgment, Sentence and decree which this court shall make or pass thereon, in case such appellant shall have the cause decided against him ; but the act makes no provision for any surrender to be inode by these latter securities, which is a proof that the Legislature did not intend that they should be discharge-able by means of a surrender. Had this been, their meaning, they certainly would have declared it, as they had (lie subject of surrender under their consideration; and made provision for it in certain cases in this very act. The act probably goes upon this reason, that the Plaintiff having by a suit at law, and verdict iu his favor, established the probable justice of his demand, the Defendant, ought then to be held to more strict terms than at (lie institution of the suit, before there was any presumptive evidence on record against him. The Legislature. probably thought it reasonable, after such evidence, that the Defendant should not have it iu his power to defeat the Plaintiff by conveying his property to other creditors, or by wasting if during the. pendency of the. appeal ; which event, combined with the circumstance of an intermediate surrender by the bail, would leave the Plaintiff entirely remediless, were it not fon the security lie has by means of the appeal bond. At the same time that they allowed the privilege of appealing to the Defendant, they were solicitous to provide, against every possible inconvenience that might result from it to the other party, and this they have intended to effect, by requiring an appeal bond with condition for prosecuting with effect, or paying the condemnation in cusp of a judgment against the appellant. This secures the Plain t iff at all events, and against all practices .to his prejudiced The sureties for the appeal therefore cannot surrender, nor can they be discharged by the surrender of the bail.
*195 Much argument ha'li bee» used respecting the meaning of the act of 1785, c. 2, and it. hath been contended, that the appeals there spoken of, are from judgments and ver-diets rendered in actions subjected by fb.it act to the County Court jurisdictions, and not appeals from all actions in general. The title of the act, dnd its preamble, it is true, only looks to the enlargement of the Comity Court’s jurisdiction ; but the provisos in the first clause,, and the second clause, relate to appeals in general, and are to be taken to be in pari materia with the act of 17“7, c. 2. They are both parts of one whole, and these parts of theact of 1785, have a reference to appeal bonds taken pursuant to the act of 1777. This is plainly evinced by the preamble or introductory part of the second clause. u And whereas from the manner in which appeals from the County Courts of Pleas and Quarter-sessions have been heretofore obtained in numerous instances, frequent injustice has happened to many just suitors, from the, delay incident to said appeals.” This is the most unequivocal reference to abuses rommitfed in the prosecution Of. appeals previous to that, time, that language can-signify, that is to say, to the prosecution of appeals-taken pursuant to the act of 1777; and for the remedying these abuses, it directs appeal bunds for the future to be sent up as a part of the record ; hut it does not direct any new species or form of bonds, it is additional to the act of 1777, which did not provide, for the sending up such bonds, and the consequence oí their omission frequently was, that the bonds were lost or mislaid, and the remedy upon them frustrated, to the prejudice ami loss of the appellees. The act of 1777 did not ascertain the mode of proceeding upon appeal bonds by the appellee, when it should be necessary to proceed upon them, whether by a new action of debt, by sci.fa. by a motion in court for judgment, or how otherwise $ and of course doubts were entertained upon that point. The act of 1777 imposed no penalty by way of restriction apon vexatious and unjust appeals, prayed sometimes for the mere purpose of delay, at others for the purpose of gratifying a litigious disposition. All these omissions are supplied by the. act of 1785, appeal bonds by that act are to be a part of the record transmitted to tin Superior Court; the appellee may enter judgment upon them-instanter, by motion to the court; and if the judgment below be affirmed, the appellant shall pay interest at the *196 rafc of twelve and a half per cent, for his delay. And if the :u t of 1785 relates to appeals generally, the argu-men*s built upon the contrary position must all fall to the ground. It was argued for the defendants, that the commitment of their pru ripal after his surrender by (lie bail, was a commitment in execution, and that there can be no fi.fa. against the sureties after this. None of these statements are just — he was not, nor could be com-mitfed in execution, because at flic time of the surrender there was no judgment against him : but.suppose him to have been committed in execution, it will not follow that that operates as a discharge of his sureties, any more than in the case where there are three obligors to a bond, and one is taken and imprisoned in execution for the debt, that will not discharge the others. 5 Rep. 86. 1 Roll. Ab. 903.pl. 21. Nothing shott of payment, ora release, will discharge the ro-obligors in such case— had he been iu execution, and been discharged by the Plaintiff, that might have discharged his sureties; but a man can never be in execution fill after judgment, and a prayer f«v that purpose entered on record, and the prayer allowed by a commit tilur entered on record, when a principal is surrendered by his hail — for if he. could be in execution merely by a surrender without prayer of the Plaintiff, he might then take advantage <>f the insolvent debtors act, and also might preclude the Plain'iff of (he benefit of a jfi.fa. when perhaps at the time of the surrender. the Plaintiff might know that in a little time to come, he would have property enough, as by the death of relations, marriage or other means — and should he be once in execution by his body, the Plaintiff could never afterwards during his life, have a fi.fa. and therefore the law will not say he shall be in execution — for fhe Plaiu-tiff, even upon a surrender after judgment, unless the Plaintiff chuses that he shall he. so; which choice must .he manifested by a prayer on record. And if he be imprisoned upon a surrender, for instance to the Sheriff out of court, the court will release him from his imprisonment after judgment, unless the Plaintiff, in a reasonable time, apply to charge him in execution. But upon this last p >int, though the. court seemed to be very clear, Mr. Moore still though! the law was otherwise, and pressed for further time to argue it; which was allowed him by the court, and the argument did not again come on during this term.